IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYCE A. BONJORNO,

    Plaintiff,

v.

AUDRA ASHER,

    Defendant.

Case No. 5:24-cv-04111-HLT-BGS

**MEMORANDUM AND ORDER**

    Plaintiff Tyce Bonjorno[1] has been engaged in a state-court child-custody dispute for years. This federal action arises out of that child-custody battle. Bonjorno is unhappy with how the court-appointed investigator, Defendant Audra Asher, investigated child-custody matters and recommended resolution. He is frustrated with the Kansas judicial system and wants a federal court to recognize how he has been wronged in state court. Bonjorno asserts thirteen claims against Asher. He claims Asher violated the constitution and state law and "poisoned the entire custody process." Doc. 26 at 51. He seeks $11 million in damages plus injunctive and declaratory relief.

    The Court sympathizes with Bonjorno's situation. Undoubtedly the process has been contentious, frustrating, and draining. But the remedy for Bonjorno's alleged wrongs is not in federal court. And it is not against a court-appointed investigator for a recommendation not ultimately used by the state court. The Court only addresses a few of the problems with Bonjorno's case because they alone represent insurmountable hurdles. The *Rooker-Feldman*[2] doctrine and

---

[1] The Court liberally construes Bonjorno's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

[2] *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

quasi-judicial immunity broadly preclude the Court from hearing Bonjorno's case against Asher. Other hurdles include *Younger*[3] abstention for injunctive relief and a host of plausibility issues with individual claims. The result is the same, regardless of the analysis; the Court grants Asher's motion to dismiss the federal case without prejudice. Doc. 41.

I.   **BACKGROUND**

The Rush County District Court appointed Asher as a child-custody investigator to help resolve custody and parenting-time issues between Bonjorno and the mother of his children, Tara Jennings, in August 2022. Asher investigated matters and filed a recommendation in August 2023. Bonjorno's counsel objected but did not identify his specific substantive objections. Doc. 26-1 at 56-57. The parties (both represented at the time by counsel) eventually agreed on a journal entry, which the judge entered in May 2024. The agreed journal entry states that it is a settlement of all pending issues. It specifically references Bonjorno's objection to Asher's recommendation. Doc. 42-3. Less than two months after the judge signed the agreed journal entry, Bonjorno moved pro se to modify the child-custody terms. Doc. 42-4. Bonjorno referenced alleged violations of his parenting time that pre-dated May 2024. He also criticized Asher's investigation.

The judge conducted a hearing and denied Bonjorno's motion on July 29, 2024. Asher appeared at the hearing on Bonjorno's motion and advised that she had a bill outstanding. The judge found Bonjorno had abandoned his claims about parenting time when he agreed to the journal entry. The judge further found Bonjorno had acted in bad faith and "misused and abused the court system and judicial process by using it solely for the purpose of harassing and punishing [Jennings]." *Id.* at 2. He ordered Bonjorno to pay Asher's outstanding bill.

---

[3]   *Younger v. Harris*, 401 U.S. 37 (1971).

Bonjorno filed a petition for writ of mandamus with the Kansas Supreme Court in August 2024. He alleged that state actors including Asher "failed to protect Plaintiff's constitutional rights in a custody matter involving verified child abuse and paternity fraud." Doc. 26 at 7. He cited Asher's inaction, including her "failure to speak or intervene at the July 29, 2024 hearing." *Id.* The Kansas Supreme Court denied relief.

Bonjorno filed this federal suit on November 22, 2024. Meanwhile, in Rush County District Court, Bonjorno filed a motion to enforce parenting time on December 2, 2024; a motion to recuse on December 17, 2024; two motions on December 23, 2024; and another motion to enforce parenting time on January 8, 2025. Bonjorno continues to file documents and motions in state court even in July 2025. *See* Docs. 57, 58 (supplements to the federal court record filed without permission). He has filed two other related cases in federal court. Case Nos. 6:25-cv-01042-HLT-GEB and 6:25-cv-01163-HLT-GEB. Bonjorno sues the Kansas Department for Children and Families, Kansas Child Support Services, and several associated individuals in the former, and he sues Rush County, four district judges, and two court clerks in the latter.

Bonjorno asserts the following claims against Asher in this federal lawsuit:

- Count I – Asher violated Bonjorno's Fourteenth Amendment due process right because she failed to perform a thorough investigation and denied Bonjorno access to critical records.

- Count II – Asher violated Bonjorno's Fourteenth Amendment due process right because she fabricated findings, coerced resolution, and defamed him.

- Count III – Asher violated Bonjorno's children's due process rights because she failed to evaluate or act upon reports of abuse.

- Count IV – Asher violated Bonjorno's First and Fourteenth Amendment rights to (1) petition the government, (2) access the courts, (3) receive fair procedure before interference with familial rights, and (4) be free from state-enabled abuse and neglect of children because she failed to investigate reports of abuse, concealed or ignored critical evidence, refused to act on medical and safety threats, and demanded payment.

3

- Count V – Asher violated the First and Fourteenth Amendment rights of both Bonjorno and his children by creating a danger through her failure to act and by demanding payment in retaliation for Plaintiff asserting his rights.

- Count VI – Asher violated Bonjorno's First Amendment rights when she retaliated against him because of his protected speech.

- Count VII – Asher violated Kansas law prohibiting abuse of process because she improperly used her official authority to punish Bonjorno.

- Count VIII – Asher unconstitutionally retaliated against Bonjorno by appearing at the July 2024 hearing and demanding payment, yet remaining silent on child abuse, paternity fraud, impersonation, and constitutional concerns.

- Count IX – Asher violated Bonjorno's constitutional right to due process by fabricating evidence.

- Count X – Bonjorno's constitutional right to due process was violated when the Rush County judge denied him the opportunity to speak at the July 2024 hearing, yet permitted Asher to appear without notice and demand payment from Bonjorno.

- Count XI – Asher subjected Bonjorno to intentional infliction of emotional distress when she fabricated statements, sought to unjustly terminate Bonjorno's rights, and privately influenced the judge.

- Count XII – Asher defamed Bonjorno when she made false and damaging statements in her recommendation.

- Count XIII – Asher violated Bonjorno's Fourteenth Amendment right to equal protection when she refused to act on abuse allegations, blocked his access to records, falsely attributed parental alienation to him, and engaged in ex parte communication and fabrication. At the same time, she showed deference to the mother of Bonjorno's children.

## II.   ANALYSIS

Asher moves to dismiss Bonjorno's case on multiple grounds. The Court first addresses the *Rooker-Feldman* doctrine, which is jurisdictional. To the extent *Rooker-Feldman* does not bar all of Bonjorno's claims, Asher is protected by quasi-judicial immunity for her actions as a court-appointed investigator. To the extent Bonjorno requests injunctive relief in an ongoing state-court child-custody case, the Court abstains from hearing his claims under *Younger*. And Bonjorno's

4

individual claims fail the plausibility test for additional reasons. The end result is that this case is dismissed in its entirety.

### A. *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine is a rule of abstention that bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (internal quotation marks and citation omitted). *Rooker-Feldman* applies to claims inextricably intertwined with the state court's judgment. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004). Stated differently, "if favorable resolution of a claim would upset a judgment, the claim is *Rooker*-barred if it is 'inextricably intertwined' with the judgment, even if the underlying issue was not raised or addressed in the state court that handed down the judgment." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1140 (10th Cir. 2006). "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Id.* at 1141 (citation and internal quotation marks omitted). But *Rooker-Feldman* does not bar a claim that does not rest on an allegation about the state-court proceedings; a claim that would be identical even without a state-court judgment is outside the doctrine's reach. *Id.* at 1145. *Rooker-Feldman* can apply to claims regardless of the type of relief sought.

Bonjorno petitioned the Kansas Supreme Court for a writ of mandamus compelling the Rush County District Court to take several actions, including to address Asher's alleged constitutional violations. Doc. 26-2. Bonjorno complained in his petition about Asher appearing at his July 29, 2024 hearing. *Id.* at 8. He asserted that the district court judge did not allow him to

contest Asher's statements. *Id.* at 9. He alleged that Asher failed to complete a thorough investigation and that her neglect "directly affected [Bonjorno's] constitutional rights to due process and meaningful participation in decisions concerning his children." *Id.* at 12.

The Kansas Supreme Court denied Bonjorno's petition. This is a final decision for purposes of *Rooker-Feldman*. *See Bashant v. Graves for Okla.*, 775 F. App'x 441, 442 (10th Cir. 2019); *see also Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005); *Ward v. Plymale*, 2013 WL 3776609, at *3 (S.D.W. Va. 2013). Bonjorno raises many of the same complaints about Asher's conduct here. And, importantly, he alleges injury caused by the Kansas Supreme Court opinion. *See* Doc. 26 at 6-7 ("The Kansas Supreme Court denied the petition without opinion. This left Plaintiff without relief, exacerbating his emotional distress, financial hardship, and prolonged exposure to constitutional violations."). Any ruling by this Court would therefore serve as an appellate review of a state court judgment on these matters. This is precisely what *Rooker-Feldman* prohibits. Bonjorno's effort to bring suit here is little more than a thinly-veiled attempt to call into question the Kansas Supreme Court's denial of his petition.

Bonjorno tries to avoid this outcome by insisting that he does not seek review or reversal of the custody proceeding. He claims he is instead challenging the unconstitutional conduct of Asher. Bonjorno cites *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), and *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991), for the proposition that *Rooker-Feldman* does not preclude jurisdiction over independent claims.[4]

---

[4] Bonjorno accurately quotes *Skinner*. But his quote from *Facio* does not exist. The Court mentions this inaccurate citation because it is not a one-time error. Throughout Bonjorno's amended complaint and briefing, he includes quotations that do not appear in the cases cited. *See, e.g.*, Doc. 51 at 6 (purported quote from *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)); Doc. 26 at 51 (another purported quote from *Spurlock*); *id.* at 43 (purported quote from *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)); *id.* (purported quote from *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)); *id.* at 51 (purported quote from *Banks v. Katzenmeyer*, 645 F. App'x 770, 778 (10th Cir. 2016); *id.* at 52 (purported quote from *Paul v. Davis*, 424 U.S. 693 (1976). He also cites at least one case that does not appear to exist. Doc. 51 at 15 (*Riley v. Judicial Misconduct Comm'n*, 716 F.2d 84 (1st Cir. 1983)). There may be more. But the Court eventually accepted that it could not rely on

Bonjorno's argument might hold water if his claims were truly independent. But he essentially alleges that Asher's actions (and inaction) colored the entire child-custody dispute. He seeks to hold her responsible for the "deprivation of [his] fundamental liberty interest in the care, custody, companionship, and decision-making rights over his children"; the denial of access to his children; the burden of being forced to file multiple lawsuits; his own inability to respond to findings impacting his parental rights because she concealed evidence and exculpatory records; and substantial damage to his health, reputation, and business because she refused to protect his children. Doc. 26 at 73-77.[5] He does not overtly ask the Court to set aside the Kansas Supreme Court ruling or even the Rush County agreed journal entry. He carefully avoids doing so. But it is disingenuous to suggest that a federal ruling in Bonjorno's favor would not call into question the Kansas Supreme Court decision when Bonjorno alleges the decision created and exacerbated some of his harms. The gravamen of Bonjorno's claims here seems to be that Asher unfairly reviewed and evaluated the child-custody situation for Rush County. He complained of these same actions to the Kansas Supreme Court. His claims here are inextricably intertwined with the Kansas Supreme Court ruling. This Court therefore lacks jurisdiction over some or all of Bonjorno's claims.

## B. Quasi-Judicial Immunity

The second overarching problem with this case is Asher's entitlement to quasi-judicial immunity for her actions. The Rush County District Court appointed Asher to complete the child-

---

Bonjorno's citations and focused on identifying and applying the law as it exists. The Court affords Bonjorno some latitude as he proceeds pro se. The number of inaccurate citations in his briefing, however, gives the Court concern and raises a question about how the briefs have been prepared. It also makes it virtually impossible to find that Bonjorno meets his burden to demonstrate the Court has jurisdiction. It is not the Court's job to find caselaw in support of Bonjorno's position. The Court cautions Bonjorno that Fed. R. Civ. P. 11(b)(2) applies to him despite his pro se status and that failure to comply with Rule 11 can result in sanctions.

[5] This list is incomplete. Bonjorno seeks damages for other alleged losses, plus declaratory and injunctive relief.

custody investigation. In this role, Asher functioned as part of the judicial process. She served as an aid to the judge in conducting her investigation and completing her recommendation. She is therefore entitled to immunity in the same way judges are protected by judicial immunity.

Judges acting in their judicial capacity are generally immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). This immunity extends to claims for injunctive relief. *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008). And courts recognize quasi-judicial immunity for other actors whose activities are intimately associated with the judicial process or serve as an official aid of the judge. *See Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (citation omitted); *see, e.g.*, *Martinez v. Roth*, 1995 WL 261127, at *3 (10th Cir. 1995); *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (probation officers immune for work on pretrial bond and presentence report); *Mayhew v. West-Watt*, 2011 WL 3236061, at *9-10 (D. Colo. 2011) (court-appointed child family investigator immune); *see also Demoran v. Witt*, 781 F.2d 155 (9th Cir. 1986) (probation officers preparing presentence investigation reports); *cf. Akbarnia v. Deming*, 845 F. Supp. 788, 790 (D. Kan. 1994) (psychologist performing court-ordered evaluations received "judicial function immunity" under the Kansas Tort Claims Act).

The Rush County judge appointed Asher under K.S.A. § 23-3210. Bonjorno challenges her conduct when acting in her appointed role. He contends her investigation was inadequate, that her recommendation contained inaccuracies and fabrications, and that she focused on her payment instead of the best interest of the children. A denial of quasi-judicial immunity to Asher or others conducting investigations at the request of a judge would interfere with judicial orders and discourage involvement in court proceedings. Regardless of any error she made or her motivation for certain actions, immunity "is justified by the functions it protects and serves, not by the person to whom it attaches." *Whitesel*, 222 F.3d at 867 (citations and internal quotation marked omitted).

Asher's function was to aid the judge in deciding child-custody matters. The Court determines that Asher is entitled to quasi-judicial immunity for her actions in the state-court case.

### C.    *Younger* Abstention.

The Court believes that the doctrines of *Rooker-Feldman* and quasi-judicial immunity globally preclude Bonjorno's claims in this case. But Bonjorno's claims and requests for relief overlap and are somewhat muddled. The Court has done its best to ascertain Bonjorno's claims and how they relate to his state-court proceeding and petition for writ of mandamus. To the extent injunctive relief remains unaddressed thus far, the Court determines it is barred by the *Younger* doctrine.

Bonjorno's verbosity makes it difficult to discern how many of Bonjorno's claims are barred by *Rooker-Feldman*. But even assuming they are not all barred, the Court cannot hear Bonjorno's claims for an additional reason. The *Younger* abstention doctrine precludes federal courts from interfering with state-court proceedings absent extraordinary circumstances. 401 U.S. at 43-45. The doctrine is based on principles of federalism, comity, and respect for state functions. *Id. Younger*'s comity considerations are particularly important in "child custody proceedings[, which] are an especially delicate subject of state policy." *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996). *Younger* may apply when one of three types of proceedings are involved: (1) ongoing state criminal prosecutions; (2) certain "civil enforcement proceedings" and (3) pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77-78 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989)). These are known as the *Sprint* categories.

*Younger* requires abstention when one of the *Sprint* categories is involved and "(1) state judicial proceedings are ongoing; (2) state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003). These are known as the "*Middlesex* conditions." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (referring to *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-37 (1982)). *Younger* abstention is mandatory once a federal court finds these conditions met. *Crown Point I, LLC v. Intermountain Rural Elec Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003). Extraordinary circumstances are the only way a federal court may still exercise jurisdiction. *Younger*, 401 U.S. at 46. These are limited; a plaintiff must show bad faith, harassment, or another unusual circumstance that would call for equitable relief. *Id.* at 54.

A court that finds *Younger* applies must dismiss without prejudice any actions for injunctive or declaratory relief. *Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010); *Buck v. Myers*, 244 F. App'x 193, 198 (10th Cir. 2007). It must stay proceedings seeking damages unless a judgment for the plaintiff would have preclusive effect on the state-court proceedings. In that situation, dismissal is appropriate. *Norris v. Johnson Cnty. Prob. & Juv. Ct.*, 2010 WL 1141263, at *4 (D. Kan. 2010) (citations omitted).

1. ***Sprint* Category.**

Plaintiff does not contend the Rush County proceeding falls outside of the three *Sprint* categories. In the absence of an argument to the contrary, the Court finds that it falls under the third category.[6] The Rush County proceeding is a "civil proceeding[] involving certain orders . . .

---

[6] A plaintiff bears the burden to establish the court's jurisdiction. Although caselaw is inconsistent, it appears that the Tenth Circuit treats *Younger* as a jurisdictional doctrine. *See Serna v. City of Colo. Springs*, 2025 WL 471224, at *2 (10th Cir. 2025) (treating *Younger* as jurisdictional); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). *But see D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir.

uniquely in furtherance of the state courts' ability to perform their judicial functions." The Tenth Circuit and its district courts regularly find domestic proceedings fall under this category because of the state court's unique role governing matters relating to families. *See Morkel v. Davis*, 513 F. App'x 724, 728 (10th Cir. 2013); *Thompson v. Romeo*, 728 F. App'x 796, 798 (10th Cir. 2018); *Snyder v. Goble*, 2025 WL 484876, at *2 (10th Cir. 2025). *But see Covington v. Humphries*, 2025 WL 1448661, at *5 (10th Cir. 2025); *Bellingsky v. Galan*, 2025 WL 2047809, at *4 (10th Cir. 2025). This case involves an order by the Rush County judge appointing Asher as an investigator. It involves the way she carried out those duties. It also involves the Rush County court's failure to acknowledge the constitutional violations Bonjorno alleges Asher committed when acting as an investigator for the court. And Bonjorno seeks a structural injunction that would govern the way court-appointed investigators are allowed to act in state court. *See* Doc. 26 at 76-77. He also wants state entities to put in place "ethical guardrails" to prevent constitutional violations. *Id.* at 77. If federal courts were allowed to meddle in these matters, it would interfere with state courts' abilities to perform their judicial functions. A state court judge cannot effectively perform her judicial functions if forced to wait for federal proceedings challenging state-court actions to conclude before entering and modifying orders.

### 2.     *Middlesex* Conditions.

The Court next proceeds to the three inquiries known as the "*Middlesex* conditions."

**Ongoing State Proceeding.**

The first question under *Middlesex* is whether there is an ongoing state proceeding. The continued activity of the Rush County court demonstrates it is ongoing. The custody issues remain

---

2013) (noting that calling *Younger* jurisdictional is not "precisely correct"); *Prince v. Walters*, 2025 WL 987022, at *1 n.1 (D. Kan. 2025) (citing *Goings v. Sumner Cnty. Dist. Attorney's Off.*, 571 F. App'x 634, 639 n.4 (10th Cir. 2014)).

subject to its jurisdiction. Custody can be modified at any time. Indeed, Bonjorno has moved for modification since the agreed journal entry. *See* Doc. 42-4. The Court understands that the agreed journal entry was signed and entered by the judge, suggesting some finality to the case. But the nature of child custody proceedings is fluid and ongoing. *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 621-28 (E.D. Penn. 2014) (addressing child custody proceedings in Pennsylvania and noting the unique fluid nature of child custody proceedings); *cf. Taylor v. Sedgwick Cnty. Bd. of Comm'rs*, 2019 WL 4752044, at *6 (D. Kan. 2019) (explaining that a child support case is ongoing until the children reach majority). Bonjorno seeks to use the agreed journal entry as both a sword and a shield. He claims that it shows the case is not ongoing. But he also calls its validity into question, challenging the constitutionality of the underlying investigation that allegedly poisoned the entire case. Bonjorno cannot have it both ways. He continues to file motions and seek relief in Rush County. Bonjorno's argument that the proceeding is <u>not</u> ongoing (despite his own continued filing activity) rings hollow.

**Important State Interest.**

The second question is whether the child-custody proceeding implicates important state interests. It does. States have an important interest in the health and relations of families. *See Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1357 (D. Kan. 1994); *see also Wideman v. Colorado*, 242 F. App'x 611, 614 (10th Cir. 2007); *Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005) ("It is well-established that federal courts lack jurisdiction over the whole subject of the domestic relations of husband and wife, and parent and child." (brackets and internal quotation marks omitted)). It is beyond dispute that Bonjorno's claims here involve important state interests.

**Adequacy of State Forum.**

The third question is whether Bonjorno has an adequate forum in state court. A state proceeding offers an adequate forum if the plaintiff has an "opportunity to raise and have timely decided by a competent state tribunal" the claims in the federal complaint. *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435-37 (1982) (citation omitted). A plaintiff typically has an adequate state-court opportunity unless "state law clearly bars the interposition of the [federal statutory] and constitutional claims.'" *Phillips v. Martin*, 535 F. Supp. 2d 1210, 1215 (D. Kan. 2008), *aff'd*, 315 F. App'x 43 (10th Cir. 2008) (quoting *J.B. v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999)). A plaintiff bears the burden to show that state procedural law bars the presentation of his claims. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14-15 (1987) (citation omitted); *Valdez*, 186 F.3d at 1291. But his failure to present the federal claims does not make the state procedures inadequate. *Juidice v. Vail*, 430 U.S. 327, 330 (1977); *Phillips*, 535 F. Supp. 2d at 1215-16. And federal courts assume state proceedings offer an adequate remedy in the absence of unambiguous contrary authority. *Pennzoil Co.*, 481 U.S. at 15.

Bonjorno has not shown that the child custody proceeding fails to provide him an adequate forum to raise his federal claims. He has not identified a state law that bars presentation of his claims. Mere disagreement with outcomes does not render a forum inadequate. *See Winn v. Cook*, 945 F.3d 1253,1258 (10th Cir. 2019) ("*Younger* requires only the availability of an <u>adequate</u> state-court forum, not a favorable result in the state forum."). Kansas district courts are courts of general jurisdiction. *See* K.S.A. § 20-301. They are generally competent to hear § 1983 claims. *See Nevada v. Hicks,* 533 U.S. 353, 366 (2001). Bonjorno in fact did raise constitutional claims in his petition for writ.[7] And the Tenth Circuit consistently approves abstention for constitutional challenges to

---

[7] Bonjorno also attempted to modify the agreed custody arrangement by criticizing Asher's investigation. Doc. 42-4 at 7-8. The Rush County judge rejected his challenge based on Bonjorno's settlement of his objections to Asher's

child-custody proceedings. *See Fisher v. Lynch*, 2008 WL 2152053, at *2 (D. Kan. 2008) (collecting cases). Bonjorno fails to show an inadequate forum in state court.

### 3. Extraordinary Circumstances.

All three requirements for *Younger* abstention are met. This means the Court must abstain unless Bonjorno shows extraordinary circumstances. *Phelps v. Hamilton*, 59 F.3d 1058, 1063-64 (10th Cir. 1995). This is a heavy burden, and the exceptions are narrow. *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (citation omitted). A federal court need not abstain if the state proceeding was "commenced in bad faith or to harass" or "based on a flagrantly and patently unconstitutional statute" or if there is "any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate." *Phelps*, 59 F.3d at 1063-64 (quoting *Younger*, 401 U.S. at 53–54).

Bonjorno fails to meet his burden. He alleges in his amended complaint that the Court must assert jurisdiction because of (1) ongoing irreparable constitutional harm because Asher "continues to suppress abuse evidence and refuse to act on new threats to child safety"; (2) bad faith, as shown by Asher's "retaliatory demand for money during a hearing where she had no notice or lawful purpose, while ignoring evidence of constitutional violations"; and (3) "[f]lagrant and systemic constitutional violations, including denial of fair process, suppression of exculpatory evidence, denial of access to court records, and fabrication of judicial evidence." Doc. 26 at 44, 45. But these allegations are conclusory and insufficient to meet Bonjorno's heavy burden to show extraordinary circumstances.

---

recommendation. Bonjorno's agreement to abandon his objections does not render the state-court forum inadequate.

One thing to bear in mind is that Bonjorno <u>agreed</u> in Rush County to settle any dispute he had with Asher's recommendation. He did so with the advice of counsel. It was only after counsel withdrew that Bonjorno apparently developed buyer's remorse. Any challenge to Asher's investigation and eventual recommendation would necessarily call into question the agreed journal entry setting forth the child custody provisions. Bonjorno cannot call his constitutional claims against Asher "independent" to get another bite at the apple. He tried (and continues trying) to get relief in Rush County. He tried to get relief from the Kansas Supreme Court. He has now tried (and continues trying) in federal court. But federal court is not the place to bring a domestic dispute. Bonjorno attempts to plead around the nature of his claims by labeling them constitutional violations against the child-custody investigator. But his attempt falls flat. This case remains at its core a dispute about how a domestic matter was investigated.[8] Any attempt to continue the dispute in federal court reflects arguable bad faith and harassment on the part of Bonjorno himself. It does not reflect a bad faith or harassing nature of the state-court proceeding.

Bonjorno has not shown an exception to *Younger* abstention is met. The Court therefore abstains from exercising jurisdiction over any remaining claims for injunctive or declaratory relief.

### D.   Additional Grounds for Dismissal

The above analysis demonstrates why Bonjorno's case is subject to dismissal on a broad basis. But the individual claims present their own problems. The Court will not address the

---

[8] Bonjorno has filed reams of documents as exhibits in this case. Doc. 26 Exhibits 1-2 (141 pages); Doc. 51 Exhibits 1-30 (285 pages); Doc. 52 Exhibits 1-9 (60 pages); Doc. 56 Exhibits 1-4 (28 pages); Doc. 57 Exhibits 1-2 (27 pages); Doc. 58 Supplement (7 pages). He asks the Court to consider all exhibits attached to Docs. 51 and 52 as incorporated by reference into his amended complaint. Doc. 54. He also asks the Court to take judicial notice of the exhibits attached to Doc. 56. The Court has reviewed Bonjorno's exhibits in resolving the motion to dismiss. They, too, show he is challenging the underlying result of the proceedings, as they represent what is likely a large portion of the Rush County record.

individual claims in detail, but mentions them briefly here to assure Bonjorno it has carefully reviewed the case.

- <u>Bonjorno's Due Process and First Amendment Right to Petition for Redress Claims</u>: These claims pose a standing problem. Bonjorno's injury is not fairly traceable to Asher's conduct. The court appointed Asher to complete an investigation and make a recommendation on child custody. She did. Bonjorno was given an opportunity to object to Asher's recommendation. He did. But Asher's recommendation ultimately was not part of the proceeding because Bonjorno settled his challenge. There was no trial, and Asher did not testify. There can be no connection between Asher's recommendation and the Rush County judge's decision to sign the agreed journal entry.

- <u>Bonjorno's Due Process Claims on Behalf of His Children</u>: Bonjorno's children are not parties to this suit. And he proceeds pro se and cannot assert claims on their behalf.

- <u>Bonjorno's Equal Protection Claim</u>: Bonjorno claims that Asher allowed his children's mother to pay her portion of the fees more slowly than she allowed him. But at the time Asher reported Bonjorno's non-payment of fees to the judge, he was the only one with an outstanding balance. The mother was not similarly situated.

- <u>Bonjorno's State-Law Tort Claims</u>: These claims are similarly plagued by problems. Bonjorno's defamation claim is untimely. And Asher's recommendation, prepared at the request of the court for use in judicial proceedings, is privileged. Bonjorno cannot present a claim for abuse of process because Asher did not begin a proceeding. Finally, Bonjorno's claim for intentional infliction of emotional distress is really another defamation claim in disguise.

- <u>Bonjorno's Requests for Injunctive Relief</u>: Bonjorno seeks much broader injunctive relief than this Court can grant. For example, Bonjorno asks the Court to permanently enjoin Asher and "all similarly situated court-appointed investigators" from taking certain actions. Doc. 26 at 76-77. This request demonstrates the untenable degree to which Bonjorno wants federal court intervention in his ongoing state-court proceeding.

### III.   CONCLUSION

The Court is sympathetic to the stress that the adjudication of his parental rights has undoubtedly placed on Bonjorno. The Court is also sympathetic to the difficulties inherent in litigating in federal court without the benefit of legal counsel or a legal education. But the Court must balance these sympathies with its obligations to ensure that the exercise of its authority is fair and just. The Court has done its best to thoroughly review Bonjorno's filings. They are excessive,

oftentimes difficult to follow, and contain incorrect citations. These characteristics have complicated the Court's review. This order does not address all arguments raised throughout the briefing. The absence of explanation of any argument here, though, does not mean it has not been considered; the Court focuses its order on those arguments that are necessary to its review.

The Court dismisses Bonjorno's complaint in its entirety. The Court dismisses Plaintiff's claims based on the Kansas Supreme Court's denial of writ under *Rooker-Feldman*. The Court dismisses any remaining claims based on quasi-judicial immunity. And to the extent any claim for injunctive and declaratory relief remains unaddressed by the Court's first two rulings, the Court dismisses those claims under *Younger* abstention. *See Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989). Finally, Bonjorno's claims suffer from additional maladies that require their dismissal. The amended complaint is dismissed without prejudice.

THE COURT THEREFORE ORDERS that Asher's motion to dismiss (Doc. 41) is GRANTED. The Court DISMISSES Bonjorno's claims WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Bonjorno's motion to incorporate exhibits (Doc. 54) is GRANTED.

The case is closed. Fed. R. App. P. 4 grants Plaintiff 30 days to file an appeal.

IT IS SO ORDERED.

Dated: August 13, 2025      /s/ *Holly L. Teeter*
                                      HOLLY L. TEETER
                                      UNITED STATES DISTRICT JUDGE